**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

PAUL SALMANS,

    *Plaintiff*,

v.

FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY,

    *Defendants*.

---

# COMPLAINT

---

Plaintiff Paul Salmans, by and through his counsel of record, McDermott Law, LLC, for his Complaint against Defendant First Reliance Standard Life Insurance Company, states and alleges as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

2. Plaintiff Paul Salmans ("Plaintiff" or "Mr. Salmans"), at all times pertinent hereto, was and is a resident and domiciliary of the State of Colorado.

3. Before becoming disabled, Mr. Salmans worked as Maintenance Supervisor for JRD Management dba Maxx Properties.

4. Upon information and belief, Maxx Properties has a principal place of business and headquarters in the State of New York.

5. Upon information and belief, Maxx Properties owns real estate, manages properties, and employs residents of at least six states, including the State of Colorado.

6. Mr. Salmans was employed by Maxx Properties in the State of Colorado from September 28, 2015 through March 1, 2019.

7. By virtue of his employment, Mr. Salmans was a "participant" in the Maxx Properties Health and Welfare Benefit Plan ("Plan") as that term is defined by 29 U.S.C. § 1002(7) and (8).

8. The Plan is an "employee benefit plan" as that term is defined by 29 U.S.C. § 1002(3).

9. As part of the Plan, employee participants are to be provided long-term disability ("LTD") income replacement benefits if they become disabled as defined by the Plan and policy of insurance.

10. The Plan's LTD benefits were funded by Group Long Term Disability Insurance Policy number LTD 127370 ("LTD Policy"), issued by First Reliance Standard Life Insurance Company ("Defendant" or "FRSLIC") to JRD Management dba Maxx Properties on April 1, 2016.

11. FRSLIC is the insurer and designated claim administer for the available LTD benefits under the Plan, which was amended and restated on August 1, 2018.

12. FRSLIC is a New York insurance company, organized and existing under the laws of the State of New York, with its principal place of business and headquarters in New York, New York.

13. By issuing the LTD Policy to Maxx Properties, FRSLIC purposefully availed itself to the jurisdiction of the State of Colorado by insuring Maxx Properties' employees, who are domiciled residents of Colorado.

14. By insuring Maxx Properties' employees in the State of Colorado and administering claims under the LTD Policy, FRSLIC conducted the business of insurance in the State of Colorado.

15. While administering Mr. Salmans' claim, FRSLIC sent correspondence and benefit payments to Mr. Salmans in the State of Colorado.

16. FRSLIC's conduct of insuring and administering claims in the State of Colorado established a connection with the state such that FRSLIC could reasonably anticipate being haled into Court in Colorado.

17. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1331 and 29 U.S.C. §§ 1132(e) and (f).

18. This Court has personal jurisdiction over the Defendant.

19. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## II.     GENERAL ALLEGATIONS

### A.     The LTD Policy

20. Under the LTD Policy, if Mr. Salmans became Disabled while the Policy was in effect, FRSLIC would pay 60% of Mr. Salmans' monthly Covered Earnings rounded to the nearest dollar, less other income benefits.

21. The LTD Policy defines "disabled" as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>
> 1. During the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
> …
> 2. After a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis.

22. Upon information and belief, FRSLIC was responsible for investigating and evaluating claims for benefits and appeals and made all determinations regarding participants' eligibility for and entitlement to benefits under the LTD Policy.

23. FRSLIC was required to ensure that all benefit determinations under the Policy were reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

24. FRSLIC, as the insurer and underwriter of the LTD Policy, is solely liable for the payment of benefits on all approved claims and, if a claim is approved, must pay those benefits from its own funds.

### B. Mr. Salmans' Disability

25. Mr. Salmans' medical history is significant for the following conditions: cervical radiculopathy/radiculitis, spondylosis, and neural foraminal stenosis; cervicalgia; brachial neuritis; degenerative disc disease with facet arthropathy; epilepsy/recurrent seizure disorder; osteoarthritis of the left knee and first carpometacarpal of the left hand; bursitis of the left shoulder and right hip; tendinitis of the left rotator cuff and left wrist; left and right shoulder impingement syndrome; right superior labrum anterior and posterior tear; acromioclavicular joint arthropathy; high-grade partial-thickness tear supraspinatus tendon of the rotator cuff; iliotibial band syndrome; chronic neck pain, thumb pain, jaw pain, greater trochanteric pain syndrome; persistent asthma; dyspnea; pulmonary nodule; sensorineural hearing loss; tinnitus; restless leg syndrome; dyspnea; anxiety; and moderate obstructive sleep apnea.

26. On November 15, 2018, Mr. Salmans underwent a seven-level fusion procedure from C2-T2 with left C4-6 foraminotomy, which was performed by Douglas Wong, M.D.

27. The following picture depicts an x-ray taken following the surgical procedure:



28. As a result the culmination of his medical conditions, Mr. Salmans ceased work as a Maintenance Supervisor for Maxx Properties on November 14, 2018.

29. Prior to submitting his LTD claim with FRSLIC, Mr. Salmans submitted disability insurance claims to the short-term disability ("STD") insurance carriers and administrators, Metropolitan Life Insurance Company and Wesco Insurance Company.

30. MetLife approved and paid Mr. Salmans STD claim under an Own Occupation definition of disability on four occasions for the maximum benefit period of November 15, 2018 through May 22, 2019.

31. Wesco Insurance Company approved and paid Mr. Salmans' STD claim for total disability benefits for the maximum benefit period of November 22, 2018 through May 22, 2019.

C. **FRSLIC's Approval of LTD Benefits Under the Regular Occupation Definition of Disability**

32. On February 25, 2019, FRSLIC received Mr. Salmans' claim for LTD benefits.

33. On February 11, 2019, Douglas Wong, M.D. completed an FRSLIC form in support of Mr. Salmans' LTD claim and restricted Mr. Salmans to sitting, standing, and driving for 1-3 hours during an 8-hour workday. He completely restricted pushing, pulling, bending, and crawling. Mr. Salmans could squat, climb, reach above the shoulder, kneel and use foot controls on an occasional basis (0-33%). He was restricted to lifting up to 10 lbs. maximum.

34. On April 4, 2019, FRSLIC's Nurse Case Manager ("NCM"), Heather DiFalco, RN, accepted the restrictions assigned by Dr. Wong and noted, "the claimant's prognosis for return to level of functioning may be guarded."

35. On May 1, 2019, Dr. Wong wrote another letter completely restricting Mr. Salmans from bending, twisting, lifting more than 10 pounds, sitting longer than 10 minutes, and walking longer than 10 minutes.

36. Based upon the opinions of NCM DiFalco and Dr. Wong, FRSLIC determined that Mr. Salmans' medical conditions prevented him from performing his Regular Occupation as a Maintenance Supervisor.

37. FRSLIC paid Mr. Salmans' LTD benefits from May 14, 2019 through October 24, 2019.

38. On June 7, 2019, the Social Security Administration concluded Mr. Salmans' medical conditions prevent him from engaging in any substantial gainful activity and approved his Social Security Disability Insurance ("SSDI") claim.

39. On July 25, 2019, FRSLIC informed Mr. Salmans that he owed an overpayment due to the approval of his SSDI claim.

40. After recovering the overpayment associated with the SSDI award, FRSLIC began another review of Mr. Salmans' entitlement to LTD benefits under the Regular Occupation definition of disability.

41. An FRSLIC claim management note from October 8, 2019 stated, "It appears EE has light/medium occupation and given the extensive surgery performed, RTW FO OO unlikely…"

42. On October 14, 2019, Dr. Wong completed a Physical Capabilities Questionnaire ("PCQ") and restricted Mr. Salmans to occasionally (33% or less) sitting, standing, walking, bending at waist, squatting at knees, climbing stairs, using foot controls, driving, simple grasping, reaching above and at waist/desk level, and pushing/pulling. Mr. Salmans could not climb ladders, kneel or crawl.

43. On October 25, 2019, FRSLIC's NCM, Audrey Snyderman, RN only considered the April 4, 2018 review of NCM DiFalco along with Dr. Wong's orthopedic note of June 26, 2019, and did not consider the October 14, 2019 PCQ or any other evidence in support of Mr. Salmans' claim.

44. Based on NCM Snyderman's cursory review, she claimed Mr. Salmans could perform light exertional level duties and that he reached maximum medical improvement.

45. NCM Snyderman's review was provided to FRSLIC's Vocational Rehabilitation Consultant ("VRC"), Joon Im, who reviewed the vocational evidence in the file and opined that Mr. Salmans' occupation required light exertional physical demands.

46. VRC Im's opinion ignored Maxx Properties' assessment that a Maintenance Supervisor position involved medium duty occupational demands.

47. Based exclusively on NCM Synderman's and VRC Im's reviews, FRSLIC terminated Mr. Salmans' LTD benefits by letter dated October 30, 2019.

**D.    Plaintiff's Appeal of the Adverse Benefit Determination and FRSLIC's Failure to Render Decisions on His Claims within the ERISA Deadlines**

48. In full compliance with 29 U.S.C. § 1133, Mr. Salmans timely submitted the ERISA-mandated internal appeal to FRSLIC on April 24, 2020, which included medical records, testimonial letters from Mr. Salmans and his family, nine (9) narrative opinion letters and forms from his treatment

7

provider, a Functional Capacity Evaluation, Mr. Salmans' Social Security Disability Claim file, seven (7) determinations made by three insurance companies that Mr. Salmans was disabled, arguments explaining the reasons FRSLIC's decision to terminate benefits was arbitrary and capricious, and other evidence in support of his claim.

49. Under ERISA, 29 C.F.R. § 2560.503-1(i)(4), "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing."

50. As Mr. Salmans submitted his appeal letter to FRSLIC via email on April 24, 2020, ERISA required that an appeal decision be reached within 45-days of that date, or by June 8, 2020. *See* 29 C.F.R. § 2560.503-1(i)(3)(i)

51. FRSLIC did not render an appeal decision within 45-days of its receipt of Mr. Salmans' appeal.

52. On May 19, 2020, FRSLIC confirmed its receipt of Mr. Salmans' appeal and requested an extension of time while it awaited the completion of a Peer Review by an independent physician.

53. As the ERISA regulations required FRSLIC to performed a medical review during the appeal process, its request for such a review did not constitute a "special circumstance" allowing FRSLIC to delay the appeal decision.

54. FRSLIC was required to provide Mr. Salmans with a reasonable opportunity to respond to new or additional evidence and/or rationale upon which it intended to base an adverse benefit determination "as soon as possible and sufficiently <u>in advance</u> of the date on which the notice of adverse benefit determination on review is required to be provided…" 29 C.F.R. § 2560.503-1(h)(4)(i).

55. FRSLIC did not provide Mr. Salmans with an opportunity to respond to the medical records review of Victor Marwin, M.D. until four (4) days *after* the appeal decision deadline expired.

56. FRSLIC's email of June 12, 2020, which unilaterally attempted to toll the appeal decision until Mr. Salmans submitted a response to Dr. Marwin's review was inappropriate.

57. In response to Dr. Marwin's review, Plaintiff provided clarification letters from himself, the functional capacity evaluator, and Dr. Wong explaining that Mr. Salmans did not recover from the seven level fusion for the period of October 25, 2019 through January 28, 2020 and reiterated that the January 29, 2020 functional capacity evaluation results applied retroactively.

58. On June 15, 2020, the functional capacity evaluator stated "there is no objective evidence that Mr. Salmans has the functional tolerances to tolerate "sedentary" work as concluded by Dr. Marwin."

59. On June 22, 2020, Dr. Wong confirmed that he did not believe Mr. Salmans could perform sedentary work.

60. Mr. Salmans supplemented his FRSLIC LTD Appeal with MetLife's July 6, 2020 determination that Mr. Salmans was unable to perform his regular job or any other job for which he was fit by education training and experience, which resulted in the approval of his claim for continuation of life insurance protection benefits.

61. On July 17, 2020, FRSLIC referred Mr. Salmans' claim for a review by a neurologist, Michael Chilungu, M.D.

62. Even if FRSLIC's May 19, 2020 extension request was authorized by the ERISA Regulations—which it wasn't—FRSLIC's appeal decision deadline would have expired on July 23, 2020.

63. Not only did FRSLIC ignore the 45-day deadline but it did not render an appeal decision within 90-days of receiving notice of Mr. Salmans' appeal.

9

64. On July 27, 2020, FRSLIC provided Dr. Chilungu's medical review and provided Plaintiff with the opportunity to respond.

65. On August 4, 2020, Plaintiff described the incomplete and unreliable nature of Dr. Chilungu's review.

66. FRSLIC upheld its adverse benefit determination on August 10, 2020—eighteen days after the 90-day deadline expired.

67. In upholding its adverse benefit determinations, FRSLIC ignored the vast majority of the evidence submitted with the appeal, and it relied exclusively on the opinions of its hired medical and vocational reviewers.

68. Mr. Salmans exhausted all required administrative remedies and is entitled to seek the relief requested in this Complaint.

69. Since originally filing his claim for LTD benefits, Mr. Salmans has been and remains disabled as a result of an Injury or Sickness as the Policy defines those terms.

70. Mr. Salmans is entitled to LTD benefits under the LTD Policy from the time LTD benefits were terminated on October 25, 2020, and such benefits are due and owing through the date of judgment and through the maximum benefit period of the LTD Policy.

E. **FRSLIC's Adverse Decisions Are Not Entitled to Deference**

71. FRSLIC's adverse benefit determinations were not substantially justified, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuses of any discretion allowed, and were wrongful under the circumstances.

72. In upholding the adverse benefit determination, FRSLIC failed to review and consider evidence contained within the claim file proving Mr. Salmans' disability.

73. FRSLIC's adverse benefit determinations are contrary to the overwhelming evidence in the file, including Mr. Salmans' testimonial letters describing his symptoms, letters from his friends

and family describing their observations of his subjective symptoms, nine (9) narrative opinion letters and forms from his treatment provider, a Functional Capacity Evaluation, the Social Security Administration's approval of SSI benefits, and seven (7) determinations made by three insurance companies that Mr. Salmans was disabled, among other evidence.

74. FRSLIC's failure to perform a full and fair review of Mr. Salmans' claim was the result of a conflicted claim process; therefore, it is not entitled to deference.

### III.   CLAIM FOR RELIEF
### (Claim for Relief Under ERISA Section 502(a))

75. Mr. Salmans incorporates herein all allegations contained in this Complaint.

76. Mr. Salmans brings this action under ERISA Section 502(a), which, among other remedies provides him with a right to file a civil action to recover benefits due under the Policy and Plan, to enforce his rights under the Policy and Plans, and/or to clarify his right to future benefits under the Policy and Plan. *See* ERISA Section 502(a)(1)(b), 29 U.S.C. § 1132 (a)(1)(b).

77. The evidence presented to FRSLIC establishes that Mr. Salmans has been continuously disabled under the terms of the Policy from the date benefits began through present.

78. Mr. Salmans satisfied all conditions precedent to receiving benefits under the Policy.

79. At all relevant times, Mr. Salmans is and has been entitled to LTD benefits under the Plan and Policy.

80. Defendant ignored and/or unreasonably discredited information supporting Mr. Salmans entitlement to LTD benefits under the Policy.

81. By the acts and omissions described herein, and through others likely to be uncovered through discovery, Defendant breached the terms of the Policy.

82. As a direct and proximate result of Defendant's breach, Mr. Salmans has been denied benefits due to him under the LTD Policy since the dates his benefits were terminated.

83. Mr. Salmans brings this action to recover past-due LTD benefits (with interest) retroactive to October 25, 2019 (the date FRSLIC ceased paying his LTD benefits).

84. Because the Defendant repudiated the Plan, Mr. Salmans is entitled to have this Court declare his right to future LTD benefits.

85. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Salmans may bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plan.

86. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Mr. Salmans may bring a civil action to obtain other appropriate equitable relief to redress FRSLIC's violations of ERISA and the Policy, or to enforce any provision of ERISA or the terms of the Policy.

87. By repeatedly violating multiple provisions of ERISA and the terms of the Policy, Defendant knew or should have known it could cause irreparable financial harm to Mr. Salmans.

88. Defendant is a fiduciary of the Plans for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and the administration of the Plans and Policy.

89. By delaying payment of compensable claims, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, Defendant placed its financial interests ahead of Mr. Salmans' and received financial benefits at his expense.

90. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant forced Mr. Salmans to incur significant attorneys' fees.

91. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant denied Mr. Salmans of a full and fair review of his claim and appeal.

92. As a Plan fiduciary, Defendant owes Mr. Salmans an equitable duty to remedy and compensate him for the losses they caused her to suffer and when FRSLIC breached its fiduciary obligations.

93. Under 29 U.S.C. § 1132(a)(3), Mr. Salmans is entitled to equitable relief for the separate and distinct harms he suffered from Defendant's violations of ERISA and the Plan, and such equitable relief includes the following:

   a. Acceleration—an action advancing the breaching party's obligations under a contract—is an equitable remedy available under 29 U.S.C. § 1132(a)(3)

   b. Accounting for profits—an action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   c. Disgorgement—an action seeking to have the court compel FRSLIC to return improperly gained profits—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

   d. Injunctive relief is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

   e. Restitution—an action seeking an award of damages against a defendant that has been unjustly enriched at the Plaintiff's expense—is an equitable remedy available under 29 U.S.C. § 1132(a)(3); and

   f. Surcharge—an award of money damages imposed on a fiduciary for breach of duty—is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

94. Mr. Salmans also seeks to recover all awardable interest, attorneys' fees, and costs under 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff Paul Salmans requests the Court to enter judgment in his favor and against Defendant, FRSLIC, as follows:

a) Declare that Plaintiff is disabled within the meaning of the Policy and is entitled to LTD benefits under the Plans and the Policy;

b) Order FRSLIC to pay Mr. Salmans all past-due benefits under the LTD Policy from the date they became due through the date of judgment, together with interest (both statutory and moratory) on each monthly payment from the date it became due through the maximum benefit period of the LTD Policy;

c) Determine and then declare that Mr. Salmans is entitled to receive LTD benefits under the Policy for as long as he continues to meet the terms and conditions in the LTD Policy for receipt of such benefits;

d) Order FRSLIC to pay Mr. Salmans the costs of the suit herein, including reasonable attorneys' fees, under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

e) Provide such other and further equitable relief as this Court deems just and proper under 29 U.S.C. § 1132(a)(3), including without limitation the equitable remedies of surcharge, disgorgement, injunctive relief, unjust enrichment, restitution, and/or accounting, in amounts to be proven.

Respectfully submitted this 4th day of September, 2020 by:

McDermott Law, LLC

**s/ Mary Susan L. Kern**
_____
Shawn E. McDermott, #21965
Mary Susan L. Kern, #50730
4600 S. Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*shawn@mcdermottlaw.net*
*marysue@mcdermottlaw.net*

<u>Plaintiff's Address</u>:
5635 W. 63rd Ave
Arvada, CO 80003

15